764 F.2d 1203
 25 Ed. Law Rep. 1052
 Janice L. BURKETT, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE; John Block,
Official Capacity; Ohio Department of Public Welfare;
Kenneth B. Creasy, Individually and Official Capacity;
Thomas McDowell, Individually and Official Capacity;
Sandusky County Welfare Department; Richard Simington,
Individually and Official Capacity, Defendants-Appellees.
 No. 84-3391.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 15, 1985.
Decided June 20, 1985.
 
 William H. Fraser, argued, Advocates for Basic Legal Equality, Inc., Toledo, Ohio, for plaintiff-appellant.
 Russell W. Whittenburg, argued, Asst. Atty. Gen., Columbus, Ohio, Ronald J. Mayle, Fremont, Ohio, Asst. U.S. Atty., Toledo, Ohio, Barbara C. Biddle, argued, Robert S. Greenspan, Appellate Staff, Civ. Div., Main Justice Dept., Washington, D.C., for defendants-appellees.
 Before MERRITT and MILBURN, Circuit Judges, and GILMORE, District judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff appeals from the decision of the district court granting the defendants' motion for summary judgment. This appeal presents the issue of whether Pell Grant funds spent by the plaintiff on books and supplies while such funds were temporarily restricted by her school to spending at the school bookstore are excludable from income computations for the purpose of determining entitlement to food stamps under 7 U.S.C. Sec. 2014(d)(5) and 7 C.F.R. Sec. 273.9(c)(5). On the basis of this court's decision in Shaffer v. Block, 705 F.2d 805 (6th Cir.1983), the district court answered this question in the negative. We affirm.
 
 I.
 
 2
 In 1981, while attending Terra Technical College in Freemont, Ohio, plaintiff received Pell and Ohio Instructional Grants totaling Four Hundred Seventy-four ($474.00) Dollars. Pell Grants, formerly termed "Basic Educational Opportunity Grants," ("BEO Grants") are federally funded. At Terra Technical, grant funds are credited to student accounts at the institution, from which deductions are made prior to cash payments to the student. After deduction of tuition and mandatory fees, the college retains student grant funds approximately four (4) weeks into the term until the end of the drop/add period, when the costs of selections made by the student at the school bookstore are charged against the account. The balance is then paid the student by check.
 
 
 3
 In the fall of 1981, plaintiff selected books and supplies valued at Eighty-four and 34/100 ($84.34) Dollars at the school bookstore, leaving Seventy-nine and 66/100 ($79.66) Dollars from her grant funds. Before receiving her education grants, plaintiff and her family received Ninety-eight ($98.00) Dollars per month in food stamps. After she reported the grant awards to the county welfare department, the agency recalculated her eligibility for food stamps, and included all of her grant funds as income except those used for tuition and mandatory fees. Consequently, plaintiff's food stamp entitlement was reduced to Seventy-three ($73.00) Dollars per month.
 
 II.
 
 4
 A family's entitlement to food stamps is derived according to a statutory formula based, inter alia, on family income, computed under 7 U.S.C. Sec. 2014(d). Funds received from educational grants that are used for tuition and mandatory fees are excludable from income under 7 U.S.C. Sec. 2014(d)(3). The balance of such educational grant money must count as income unless excludable under one of the other subsections of 7 U.S.C. Sec. 2014(d).
 
 
 5
 The above-cited statute and the regulations promulgated thereunder were authoritatively interpreted by this court in Shaffer v. Block, supra. In Shaffer, the plaintiff was receiving a BEO Grant (the precursor to the Pell Grant), while also receiving food stamps, and we framed the issue to be whether portions of the plaintiff's grant were excludable from income computation for food stamp purposes because those portions were "specifically earmarked by the grantor for education expenses." 705 F.2d at 813-14 (quoting 7 C.F.R. Sec. 273.9(c)(5)(iv)). In rejecting the plaintiff's argument that all grant funds other than those spent for tuition and mandatory fees were excludable, we held in Shaffer that plaintiff's college could not be considered the grantor under the regulations because the Department of Education regulations did not give the college the authority to restrict the student's use of the funds. We further held that the funds were not "specifically earmarked" by the Department of Education because the funds were legitimately available for expenses other than those defined in the food stamp regulations.
 
 
 6
 In Shaffer, a two-part test was established to determine the issue before us today; viz., in order for the portions of plaintiff's Pell Grant funds that were charged against her student account as payment for selections made at the school bookstore during the drop/add period to be excludable from the computation of her income for food stamp eligibility purposes, such portions must be (1) specifically earmarked for education expenses and (2) such earmarking must be by the grantor of the funds.
 
 A.
 
 7
 In Shaffer, we concluded that a school can be a grantor for earmarking purposes only "when it possesses discretionary authority enabling it to place restrictions on the use of grant or scholarship funds." 705 F.2d at 817. Because plaintiff's college "carried out only ministerial functions" that were directed by the Department of Education ("DOE") regulations, and because those regulations did not give the college the authority to restrict the student's use of the funds, we held in Shaffer that the involved college was not the grantor of the BEO grant for the purpose of earmarking. Id. In reaching the conclusion that the DOE regulations did not give the school the authority to restrict the student's use of the funds, we noted in Shaffer that a school can pay grant funds to the student either directly by check or by crediting the student's account with the institution pursuant to the DOE regulations, 34 C.F.R. Sec. 690.78 (1981). 705 F.2d at 815, 817.
 
 
 8
 In the instant case, plaintiff argues that Shaffer is not controlling because the involved college in Shaffer did not in fact credit the student's account but rather paid the student directly. Plaintiff argues that the system employed by her college, Terra Technical, (i.e., withholding funds for approximately four weeks to cover charges at the bookstore) involves precisely the discretionary authority to restrict the use of grant funds required by Shaffer before her school can be a "grantor."
 
 
 9
 We are of the opinion that Shaffer controls our decision herein. Although the involved college in Shaffer did not choose to credit the student's account, but instead paid the student directly, in Shaffer we considered this option provided to colleges under the DOE regulations and concluded:
 
 
 10
 Admittedly, the school was delegated the responsibility of determining the eligibility of applicants, calculating the amount of each recipient's award, and paying the awards to the recipients, but each of these tasks was conducted in accordance with specific guidelines and directions imposed by the DOE. The college did not have any discretionary authority; it only carried out administrative functions directed by the DOE. The DOE regulations did not give Owens Technical College the authority to restrict the student's use of the BEOG funds.
 
 
 11
 705 F.2d at 817 (emphasis supplied).
 
 
 12
 Here, Terra Technical was similarly acting in accordance with specific guidelines and directions imposed by the DOE, 34 C.F.R. Sec. 690.78, when it chose to credit this plaintiff's account rather than pay her directly. To paraphrase Shaffer, it was the federal government that specified how Terra Technical could disburse plaintiff's Pell Grant money, not Terra Technical. Therefore, Terra Technical was not the grantor of plaintiff's Pell Grant for the purpose of earmarking. See 705 F.2d at 817.
 
 B.
 
 13
 In addition to our holding that Terra Technical was not the grantor of the Pell Grant for earmarking purposes, we are also of the opinion that the funds were not specifically earmarked for education expenses.[1]
 
 
 14
 In Shaffer we concluded that in order to meet the specifically earmarked requirement of 7 C.F.R. Sec. 273.9(c)(5)(iv), "the grantor must somehow specifically designate grant funds for the education expenses defined in the food stamp regulations." 705 F.2d at 818. We also noted that books and supplies are such education expenses. Id. at 819.
 
 
 15
 The plaintiff herein further argues that by temporarily withholding her funds for payment of expenses charged at the bookstore, the funds have been specifically earmarked. We do not agree. Because the student is under no requirement to spend any funds at the bookstore, it is the student who restricts the funds by choosing to make purchases at the bookstore. Plaintiff concedes that if a student refrains from purchasing any books or supplies from the Terra Technical bookstore,[2] the entire balance of the grant received following the expiration of the drop/add period must be included as income for food stamp purposes. Therefore, just as in Shaffer, all funds not deducted for tuition and mandatory funds are legitimately available, at the plaintiff's option, for expenses other than those defined in the food stamp regulations. Hence, such funds are not specifically earmarked for education expenses by a grantor of the funds.
 
 III.
 
 16
 Accordingly, we hold that plaintiff's Pell Grant funds have not been specifically earmarked for education expenses by a grantor of the funds and, therefore, AFFIRM the decision of the district court.
 
 
 17
 GILMORE, District Judge, dissenting.
 
 
 18
 I respectfully dissent from the majority opinion, recognizing full well that Shaffer v. Block, 705 F.2d 805 (6th Cir.1983), is sound precedent in the Sixth Circuit. I think that Shaffer is distinguishable because of the way Owens Technical College, the school in the Shaffer case, distributed its grant funds--directly to the student by check immediately after deducting tuition and fees. Here, Terra College used a holding period during which any books and supplies purchased at the school bookstore were deducted. There was no holding period and no such deduction in Shaffer.
 
 
 19
 The facts are accurately set forth in the majority opinion, and I feel that they distinguish this case from Shaffer because here grant funds were not given directly to the student by check immediately after deduction of tuition and fees as in the Shaffer case, but rather were held in a student account for at least four weeks, during which time any books and supplies purchased at the school bookstore were deducted. These funds were unavailable to the student during this period, and the balance was not disbursed to the student until the fifth week of the term.
 
 
 20
 It is true, as the majority opinion points out, that the Shaffer decision holds that the college in that case was not a grantor of the loan funds for earmarking purposes. After reaching that conclusion, however, the Shaffer court goes on to consider whether the Department of Education, as the originator of the grant funds, "either directly or indirectly through Owens Tech complying with DOE regulations, specifically earmarked the BEOG funds for educational purposes, thus qualifying for the reimbursement exclusion." Id. at 817.
 
 
 21
 Looking next to the indicia of earmarking proposed by the plaintiff in that case, the court states:
 
 
 22
 We conclude that in order to meet the specifically earmarked requirement of 7 C.F.R. Sec. 273.9(c)(5)(iv), the grantor must somehow specifically designate grant funds for the education expenses defined in the food stamp regulations. In this case, we find that neither the affidavit nor the budget specifically designated Ms. Shaffer's BEOG funds for qualified education expenses.... We reach this conclusion after examining and taking into account the affidavit, the college's breakdown of expenses, the structure of the BEOG program, and most importantly the nature of the BEO grant.
 
 
 23
 Id. at 818-19.
 
 
 24
 The Shaffer court then compares the difference between the fairly broad uses for BEOG money permissible under Department of Education regulations and the fairly narrow definition of an excludable educational reimbursement under the food stamp regulations, and concludes:
 
 
 25
 Since the BEOG funds are legitimately available for normal living expenses as well as other education related expenses there is no earmarking of the funds for education expenses as intended by 7 C.F.R. Sec. 273.9(c)(5)(iv).
 
 
 26
 The affidavit signed by Ms. Shaffer does not change this result....
 
 
 27
 Similarly the budget or breakdown of expenses prepared by the college did not allocate any funds to any specific expenses.
 
 
 28
 Id. at 820.
 
 
 29
 The conclusion I draw from this section of the opinion is that the actions of the specific institution involved should be considered in each case in order to decide whether the funds have been earmarked, and I feel this language seriously undermines the appellee's position that the language used earlier in the opinion was intended to apply to all cases involving Pell grant money.
 
 
 30
 It is my opinion that the analysis of the instant case thus turns on whether the restrictions Terra College placed on the use of the funds by appellant were sufficient to "earmark" the funds for educational purposes. The court below held they did not because the student had ultimate control over how to spend the funds by virtue of the fact that the student could refrain from making any purchases at the bookstore during the first four weeks of the term, and then receive a check for the full amount left in the account in the fifth week of classes. This argument stretches credulity a little bit. It is true the student could do so, but, unless the student wished to go without books for a good part of a quarter or could find these technical textbooks elsewhere, it would be a self-defeating response to Terra College's method of distribution of the funds.[1] The simple fact is that the vast majority of students are going to buy their textbooks within the first four weeks of classes, and are going to do so at the school bookstore. Thus, for the great bulk of the student body, these funds are specifically earmarked for the purchase of books to the extent they are used to do so.
 
 
 31
 I feel that, by tying up the funds for a month, Terra College is effectively "restricting" the use of the money, since the mere fact that the student is receiving one of these need-sensitive grants indicates that the student probably does not have funds to try to circumvent the rules when the money is available for a recognized reimbursable purpose.
 
 
 32
 It should also be noted that there is an error in the district court's opinion at footnote 1, where the court states that the appellant in this case relied on exactly the same factual elements to establish earmarking of funds as did the plaintiff in Shaffer. Appellant in this case also included the affidavit of the school's financial aid director explaining Terra's method of holding funds in the student's account for the duration of the drop/add period, a factual element absent from the situation in Shaffer, and one which I feel is crucial.
 
 
 33
 I feel the case is clearly distinguishable from Shaffer because the funds were held and could only be used for books or supplies, whereas in Shaffer the student received cash.
 
 
 34
 I, therefore, respectfully dissent from the majority's opinion.
 
 
 
 *
 The Honorable Horace W. Gilmore, Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The DOE as the originator of the funds is, of course, a grantor for the purpose of earmarking. Shaffer, 705 F.2d at 817
 
 
 [2]
 Plaintiff argues that it is unrealistic to suppose that a student would purchase no supplies or books. While this is no doubt true, we also note that books and supplies may be purchased from any number of sources, including from other students. See also Shaffer, 705 F.2d at 810 n. 5 (expenses for books are not mandatory expenses)
 
 
 [1]
 It is important to note here that plaintiff does not contest the characterization of the balance remaining in her account as income for purposes of entitlement to food stamps. If a student were to forego purchasing any books or supplies for the duration of the holding period, the entire amount he or she received at the end of the period would be included